

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

March 2, 2021

**BY ECF & E-MAIL**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Silviano Christman*, 14 Cr. 236 (CS)

Dear Judge Seibel:

      The Government respectfully submits this letter in accordance with the colloquy at the February 2, 2022 conference before the Court in the above-referenced proceeding regarding the defendant's violation of the conditions of his supervised release. In particular, the Government responds to the defendant's submission regarding the same, filed on February 16, 2022, *see* Dkt. 59, and addresses whether violation specifications five and six alleged against the defendant ("Specification Five" and "Specification Six") each involved a "crime of violence" under Section 7B1.1(a) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") such that they are both Grade A violations, as categorized by the Probation Department.

      As explained below, the Probation Department correctly concluded that Specifications Five and Six are both Grade A violations because they each involved a crime of violence. As U.S.S.G. § 7B1.1 makes clear, and the Second Circuit has confirmed, when a defendant violates supervised release by committing a crime, the grade of the violation is determined based on the defendant's actual conduct and not the related criminal charge of which the defendant is convicted in a criminal proceeding. Accordingly, the defendant's contention that the Court must apply a "categorical approach" and examine the elements of the related criminal offense in the abstract and not the actual conduct at issue is without merit. And here, with respect to the actual conduct of the defendant, Specifications Five and Six each concern conduct of which there can be no dispute constitutes a crime of violence.

## Background

      On June 12, 2019, the New York City Police Department ("NYPD") notified the Probation Department that Christman had been arrested in connection with a domestic violence incident that occurred on June 5, 2019. Amended Violation of Supervised Release Report, filed Dec. 2, 2021 (the "Violation Report"), at 5. According to police reports, on June 5, 2019, at approximately 2:30 a.m., a female individual (the "Victim") who identified Christman as her then boyfriend reportedly got into a verbal dispute with Christman during which Christman assaulted the Victim. *Id.* at 8.

Christman reportedly punched the Victim several times with a closed fist, causing lacerations and swelling to her head, kicked the Victim repeatedly, choked her by placing his hands around her neck and applying pressure, which caused swelling and bruising.  *Id.*  Christman was also alleged to have thrown the Victim down a set of stairs and to have placed knife to the Victim's neck while threatening to kill her.  *Id.*

Christman was subsequently charged in a ten-count indictment filed in New York County Supreme Court (the "Indictment") and was later convicted at trial in November 2021 on four of those counts, including the following:  two counts of Aggravated Family Offense, in violation of NYPL 240.75(1), a Class E felony (Counts Four and Counts Five, one count of Assault in the Third Degree, in violation of NYPL § 120.00(1), a Class A misdemeanor (Count 8), and one count of Criminal Obstruction of Breathing or Blood Circulation, in violation of NYPL § 121.11(a), a Class A misdemeanor (Count 9).  *Id.* at 6-8; *see also* Indictment, attached hereto as Exhibit A.

As a result of Christman's conduct in connection with the above-described assault, as well as numerous other infractions and instances of unrelated offense conduct, the Probation Department has filed a Violation Report containing eight specifications of violations of supervised release.  Violation Report at 6-8.

The fifth specification ("Specification Five") charges as follows:

> ON OR ABOUT NOVEMBER 15, 2021, IN NEW YORK, NEW YORK, THE SUPERVISEE WAS CONVICTED OF A STATE CRIME, AGGRAVATED FAMILY OFFENSE, IN VIOLATION OF NEW YORK STATE PENAL LAW 240.75(1), A CLASS E FELONY, IN THAT THE SUPERVISEE WITH INTENT CAUSED PHYSICAL INJURY TO A PERSON.  MANDATED CONDITION, GRADE A VIOLATION.

*Id.* at 7.

The sixth specification ("Specification Six") charges as follows:

> ON OR ABOUT NOVEMBER 15, 2021, IN NEW YORK, NEW YORK, THE SUPERVISEE WAS CONVICTED OF A STATE CRIME, AGGRAVATED FAMILY OFFENSE, IN VIOLATION OF NEW YORK STATE PENAL LAW 240.75(1), A CLASS E FELONY, IN THAT THE SUPERVISE IMPEDED THE NORMAL BREATHING OR CIRCULATION OF THE BLOOD OF ANOTHER PERSON, APPLIED PRESSURE ON THE THROAT OR NECK OF A PERSON.  MANDATED CONDITION, GRADE A VIOLATION.

*Id.* at 7.

*United States v. Silviano Christman*, 14 Cr. 236 (CS)  Page 3 of 11
Hon. Cathy Seibel
March 2, 2022

## Discussion

### I. Legal Framework

Title 18, United States Code, Section 3583(d) provides that a sentencing court shall order, as an explicit condition of supervised release, that the defendant not commit another federal, state, or local crime during the term of supervision, among other mandatory conditions of release. 18 U.S.C. § 3583(d). There are three grades of supervised release violations—A, B, or C— corresponding to the seriousness of the conduct. U.S.S.G. § 7B1.1(a). A Grade A violation consists of:

> conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

*Id.* § 7B1.1(a)(1). A Grade B violation consists of "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* § 7B1.1(a)(2).

The Application Notes to § 7B1.1 provide that the term "crime of violence" is defined in § 4B1.2. *Id.* § 7B1.1 cmt. n.2. Under § 4B1.2(a), a "crime of violence" is a federal or state felony that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "Force Clause"), or (2) "is murder, voluntary man- slaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)" (the "Enumerated Offenses Clause"). Crimes of violence "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* § 4B1.2 cmt. n.1.

### II. Specifications Five and Six Are Grade A Violations Because the Actual Conduct Alleged in Each Constitutes a Crime of Violence

The Probation Department correctly concluded that Specifications Five and Six—which allege, respectively, that the defendant (1) with intent to cause physical injury to another person, cause such physical injury to said person and (2) with intent to impede the normal breathing or circulation of the blood of another person, applied pressure on the throat or neck of said person— each charge conduct that constitutes a crime of violence and therefore qualify as Grade A violations. The defendant contends that Specifications Five and Six each constitute a Grade B violation because determining whether a state conviction qualifies as a "crime of violence" under U.S.S.G. § 4B1.2 requires application of the "categorical approach," looking to the elements of the statutory offense in the abstract and not the actual conduct at issue, *see Taylor v. United States*, 495 U.S. 575, 602 (1990), and the statutory offense of conviction set forth in Specifications Five

and Six—New York's Aggravated Family Offense, under NYPL § 240.75—does not qualify as a "crime of violence" under § 4B1.2.

The defense's position is without merit in the very different context of determining the grade of a supervised release violation under § 7B1.1, which forecloses applying the categorical approach without regard to the actual conduct constituting the violation. Application Note 1 to § 7B1.1 provides that:

> Under 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the defendant not commit another federal, state, or local crime. A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

*Id.* cmt. n.1. Thus, under the clear, unambiguous language of § 7B1.1, when a defendant violates supervised release by committing a state crime, the grade of the violation is determined based on the defendant's *actual conduct*. "[T]he grade of the violation is to be based on the defendant's actual conduct," not on the particular offense of which he was convicted in a separate proceeding, and indeed the defendant need not be charged at all in a separate proceeding to be found guilty of committing a Grade A violation. *Id.*

The Second Circuit has confirmed that, consistent with § 7B1.1, a district court properly looks to the defendant's actual conduct when determining the grade of a supervised release violation. *See United States v. Cawley*, 48 F.3d 90 (2d Cir. 1995). In *Cawley*, the violation specification at issue alleged that the defendant had threatened a witness against him in a state burglary prosecution, which resulted in the defendant being charged with the state offense of witness intimidation. *Id.* at 91. After an evidentiary hearing, the district court found that the defendant had threatened to physically harm the witness and was guilty of the specification, and that the specification qualified as a Grade A violation under § 7B1.1(a), because it involved a "crime of violence." *Id.* at 92.

On appeal, the defendant argued that the district court had erred in classifying the specification related to the state witness intimidation offense—which did not involve an element requiring physical force—as a Grade A violation. *See Cawley*, 48 F.3d at 92. The Second Circuit, in rejecting that argument, declined to apply the categorical approach, and instead looked to the defendant's actual conduct to determine the grade of violation, in accordance with § 7B1.1. *Id.* at 93. The court of appeals concluded that, irrespective of the particular state witness intimidation offense charged in the separate proceeding, "the record amply supports the district court's finding that Cawley's *condition-violating conduct* was a Grade A violation" because the defendant's conduct satisfied the definition of "crime of violence" set forth in § 4B1.2, as "Cawley's intimidation of [the witness] constituted the 'threatened use of physical force against the person of another.'" *Id.* (emphasis added; quoting U.S.S.G. § 4B1.2). Accordingly, the Second Circuit held

that "the district court's finding that Cawley's *conduct* constituted a Grade A violation within the meaning of U.S.S.G. § 7B1.1 was proper." *Id.* (emphasis added).

In *United States v. McNeil*, 415 F.3d 273 (2d Cir. 2005), the Second Circuit again confirmed that the grade of a supervised release violation depends on the defendant's actual conduct, not the particular charge brought against the defendant for that conduct in a separate state proceeding. *See id.* at 277-79. The Second Circuit explained that: "The evident purpose of [Application Note 1 to § 7B1.1] is to assure that *the grade classification rests on the 'actual conduct' underlying the charged violation supporting the revocation of release regardless of whether or how the defendant may be charged in a criminal prosecution for the same underlying conduct*." *Id.* at 278 (emphasis added); *see id.* (violation petition must provide sufficient notice of actual conduct supporting Grade A classification).[1]

Other circuit courts across the country have similarly concluded that, in accordance with § 7B1.1, the grade of a supervised release violation depends on the defendant's actual conduct. *See, e.g.*, *United States v. Golden*, 843 F.3d 1162, 1166-67 (7th Cir. 2016) (concluding that application of categorical approach to determine grade of violation is "squarely foreclosed . . . by the Guidelines themselves" because "Application Note 1 tells the district judge to consider what the person on supervised release *did*, rather than what crimes he has been *charged with*" (internal quotation marks omitted; emphasis in original)); *United States v. Carter*, 730 F.3d 187, 192 (3d Cir. 2013) (explaining that "[i]n the revocation context . . . the categorical approach does not apply, and district courts may consider a defendant's actual conduct in determining whether they have broken the law and thus the terms of their supervised release"; "because a district court may consider a defendant's actual conduct in the revocation context, it is not limited to the actual charges or convictions in determining the grade of the violation"); *United States v. Mendoza*, 782 F.3d 1046, 1048 (8th Cir. 2015) ("The grade of violation does not depend upon the conduct that is the subject of criminal charges but rather is to be based on the defendant's actual conduct. Thus, the fact that Texas authorities charged Mendoza with possession of marijuana does not preclude a finding that he possessed the marijuana with intent to distribute and thus committed a Grade A 'controlled substance offense' violation." (citing U.S.S.G. § 7B1.1 cmt. n.1; internal quotation marks omitted)); *United States v. Cole*, 528 F. App'x 479, 481 (6th Cir. 2013) ("In determining whether the offense of larceny from a building constituted a crime of violence for purposes of [the defendant's] supervised release revocation proceeding, the district judge was not confined to the statutory definition of larceny from a building. 'Rather, the grade of the violation is to be based on the defendant's *actual conduct*.'" (quoting U.S.S.G. § 7B1.1 cmt. n.1; emphasis added)); *United*

---

[1] Furthermore, while *Cawley* and *McNeil* predate some of the jurisprudence adopting the categorical approach in different contexts such as determining whether a prior conviction qualifies as a predicate offense for 18 U.S.C. § 924(c), *see, e.g.*, *United States v. Davis*, 139 S. Ct. 2319 (2019), the categorical approach has been an established interpretive option for examining prior offenses since well before those two cases were decided, *see, e.g.*, *Taylor*, 495 U.S. at 600 (holding categorical approach applies to determination of whether prior state conviction qualifies as predicate offense for Armed Career Criminal Act). As explained herein, the Second Circuit in *Cawley* and *McNeil* declined to apply the categorical approach to the context of determining the grade of a supervised release violation.

*States v. Thomas*, 424 F. App'x 254, 256 (4th Cir. 2011) (holding that, pursuant to § 7B1.1, the grade of a violation depends on the actual underlying conduct, and affirming district court's finding that, although defendant had been convicted in state court merely of a drug possession offense, the violation was properly classified as Grade A because the actual conduct involved the intent to sell). *But see United States v. Austin*, 06 Cr. 991 (JSR) (S.D.N.Y. Dec. 14, 2020) (treating, without explanation, specification based on conviction under NYPL § 220.16(1) as Grade B violation); *United States v. García-Cartagena*, 953 F.3d 14 (1st Cir. 2020) (concluding that district court should apply categorical approach to determine grade of supervised release violation).

Significantly, in *García-Cartagena*, a case cited in the defendant's submission, *see* Def. Mem. at 8, the First Circuit explicitly noted that "[i]n concluding that the categorical approach applies here, we part ways with three other circuits," *including the Second Circuit*. *García-Cartagena*, 953 F.3d at 24 (citing, *inter alia*, *Cawley*, 48 F.3d at 93). In other words, the First Circuit recognized that the law of *this* Circuit, as established in *Cawley* and *McNeil*, is that the categorical approach does *not* apply to the determination of the grade of a supervised release violation, which instead depends on the defendant's actual conduct in accordance with § 7B1.1. That existing Second Circuit law controls in this case.

Moreover, looking to a defendant's actual conduct to determine the grade of a violation not only accords with the plain language of the Guidelines, but it is also consistent with logic and practical sense. The definition of a Grade A violation explicitly rests on the defendant's "conduct" and there is no question that a defendant may be charged with a Grade A violation for committing a crime while on supervised release regardless of whether he has been charged in a separate prosecution based on that conduct. U.S.S.G. § 7B1.1(a)(1); *id.* cmt. n.1. Given that a defendant need not be charged with *any* offense to be found guilty of a Grade A violation, the suggestion that a district court conducting revocation proceedings *must* apply the categorical approach and look *only* to the elements of some statutory offense in the abstract, does not make sense. *See Carter*, 730 F.3d at 192 ("Because revocation of release can proceed even without charges being filed, the categorical approach is necessarily not applicable in the revocation context."). For example, if Christman had assaulted the victim here and been violated in this case before being charged separately in the state, there could have been no dispute that he had committed a crime of violence qualifying as a Grade A violation. The notion that the grade of Christman's violation changes depending on whether he has been separately charged in the state and with what offense—even though his conduct remains exactly the same—is illogical and foreclosed by the Guidelines. *See* U.S.S.G. § 7B1.1 cmt. n.1 ("A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.").

Furthermore, looking to the actual conduct underlying a violation makes practical sense, as the conduct at issue generally will have occurred close in time to the violation proceeding, facilitating the district court's ability to make any necessary findings of fact regarding the conduct. Indeed, the conduct constituting a violation necessarily occurs during the period of supervision, and violation proceedings typically are initiated promptly after the conduct occurs. This dynamic is in stark contrast to other contexts where the categorical approach has been adopted, such as the

determination of career offender status, which require determining whether a prior *conviction*—often from many years earlier and for which factfinding regarding the actual conduct might be difficult or impossible—constitutes a predicate controlled substance offense or crime of violence. It thus accords with logic and practical considerations that the Second Circuit reached the conclusion, rooted in the plain language of the Guidelines, that actual conduct controls in the revocation context.

Finally, there can be no legitimate dispute that, if the Court adheres to that Second Circuit precedent and looks to Christman's actual conduct instead of applying the categorical approach, Specifications Five and Six each qualify as a Grade A violation, as the Probation Department concluded in the Violation Report. As charged in Specifications Five and Six and detailed in the Violation Report, respectively, Christman (1) with intent to cause physical injury to the Victim, caused such physical injury to the Victim, and (2) with intent to impede the normal breathing or circulation of the blood of the Victim, applied pressure on the throat or neck of the Victim. Specifically, Christman assaulted the Victim, striking and kicking her numerous times, , throwing her down a set of stairs, and then choking her by placing his hands around her neck, causing swelling and bruising. *See* Violation Report at 7-8. Accordingly, as to the conducted specified in the Violation Report Christman committed a "crime of violence" pursuant to § 4B1.2, and the specifications based on that conduct are Grade A violations.

### III. Alternatively, Specifications Five and Six Are Grade A Violations Because the New York Aggravated Family Offense Convictions Set Forth in Each Constitutes a Crime of Violence

Assuming *arguendo* that, in the context of whether a violation of supervised release constitutes a crime of violence, the Court must look to the elements of a crime, and not how the defendant perpetrated the crime, as the defendant contends, *see* Def. Mem. at 4, the New York Aggravated Family Offense convictions set forth in Specifications Five and Six still each constitute a crime of violence. If the Court were to engage in such analysis (although it need not for the reasons set forth in Section II, above), the modified categorical approach—as opposed to the categorical approach posited by the defense—would apply.

#### A. The Categorical and Modified Categorical Approaches

To determine whether an offense is a crime of violence, courts employ a "categorical approach," or a "modified categorical approach." *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). Where the criminal statute is "divisible," meaning that it "criminalize[s] multiple elements in the alternative[,] . . . courts may employ what is known as the modified categorical approach," which permits the court to consult a limited set of approved documents to determine which elements formed the basis of the defendant's conviction. *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017). Under either approach, courts identify "the minimum criminal conduct necessary for conviction under a particular statute," *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006), by looking only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts, *Descamps v. United States*, 570 U.S. 254, 261 (2013). A reviewing court "cannot go behind the offense as it was charged to reach its own determination as

to whether the underlying facts" qualify the offense as a crime of violence. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018).

Excluding a predicate conviction from the definition of crime of violence "requires more than the application of legal imagination to [the] statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). There must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. *Id.* To show that a particular reading of the statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." *Id.* To that end, the categorical approach must be grounded in reality, logic, and precedent, not lawyerly speculation. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

### B. The New York Aggravated Family Offenses Statute Is Divisible and Subject to the Modified Categorical Approach

"A statute is divisible if it 'list[s] elements in the alternative, and thereby define[s] multiple crimes' but is not divisible if it instead lists 'various factual means of committing a single element.'" *Jones*, 878 F.3d at 16 (quoting *Mathis*, 136 S. Ct. at 2249).

Under New York's Aggravated Family Offense statute, a person is guilty of a Class E felony when they commit one the "specified offenses" listed in subsection two of the statute against "members of the same family or household," including a former or current intimate partner and, within the past five years has been convicted of one of those "specified offenses" ("Specified Offense" or "Specified Offenses") against "members of the same family or household," including a former or current intimate partner. NYPL § 240.75; *see also* NYPL § 530.11(1) (defining "members of the same family or household"). The former offense and present Specified Offense do not need to be same nor do the former and current victim. NYPL § 240.75(3). The numerous "specified offenses" listed in subsection two of the statute include both violent offenses (e.g., assault and rape) and non-violent offenses (e.g., harassment, stalking, and criminal contempt).

In other words, by setting forth numerous "Specified Offenses," the Aggravated Family Offense statute "covers both forcible and non-forcible crimes." *Martinez*, 991 F.3d at 357. And a conviction for an aggravated family offense requires the "indictment to charge, the government prove, and the jury to find beyond a reasonable doubt, the precise elements" of the particular specified offense. *Id.* at 358. Indeed, unlike an indivisible statute that lacks distinct elements and lists only various means by which an offense may be committed, a jury deliberating on an aggravated family offense "is not asked to apply a broad unitary statutory formulation . . . to particular facts to decide whether the facts fit that formulation." *Id.* at 358-59. The New York Model Criminal Jury Instructions make this clear in the instruction for an aggravated family offense. The instruction requires that, if the "specified offense" is not also a separately charged offense in the case on which the jury has been instructed, the court must instruct the jury on it, as shown below:

> A person is guilty of aggravated family offense when he or she commits a misdemeanor defined as a specified offense [and he or she has been convicted of one or more specified offenses within the immediately preceding five years], and when the defendant and the person against whom [the/each] offense was committed were members of the same family or household.
>
> The following terms used in that definition have a special meaning
>
> A SPECIFIED OFFENSE is (*specify the offense[s]*).
>
> *Note:* Here, if the "specified offense" is a separately charged offense, the court may incorporate by reference its instruction to the jury on that offense; otherwise, the court must instruct the jury on the "specified offense."

N.Y. Model Crim. Jury Instructions 2d., Aggravated Family Offense, Penal Law § 240.75, *available at* https://www.nycourts.gov/judges/cji/2-PenalLaw/240/240-75.pdf. (emphases in the original). The aggravated family offense statute thus does not define a single offense with wildly varying means of committing it, but rather a multitude of offenses whose elements are defined by the underlying predicates charged and found.

### C. The Aggravated Family Offense Convictions Set Forth in Specifications Five and Six Are Crimes of Violence Because the Predicate Specified Offense for Each Involve the Use of Force

When a statute is divisible, "a court employing the modified categorical approach can then peer into the record to see which of the multiple crimes was implicated" but "may discern this only from 'a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" *Jones*, 878 F.3d at 16 (quoting *Mathis*, 136 S. Ct. at 2249).

Here, Christman was convicted at trial of Counts Four, Five, Eight, and Nine in the underlying Indictment. Count Eight charged Christman with Assault in the Third Degree, in violation of NYPL § 120.00(1), and Count Four charged him with an Aggravated Family Offense for which the predicate Specified Offense was the assault. Count Nine charged Christman with Criminal Obstruction of Breathing or Blood Circulation, in violation of NYPL § 121.11(a), and Count Five charged him with an Aggravated Family Offense for which the predicate Specified Offense was the criminal obstruction. Each of these Aggravated Family Offense convictions (that are the subject of Specifications Five and Six) qualify as a crime of violence under the Force Clause, as further explained below.

To determine whether the Aggravated Family Offense convictions in Counts Four and Five are each a crime of violence under the modified categorical approach, the Court must consider "whether the predicate offense has as an element the use, attempted use, or threatened use of

physical force against the person of another." *United States v. Pereira-Gomez*, 903 F.3d 155, 164 (2d Cir. 2018). Put another way, the "requisite analysis" is focused on finding whether the statute at issue has an element meeting the requirements of the Force Clause. "It is not necessary that *every* element of the crime involve violence; only one element must do so." *Martinez*, 991 F.3d at 356. Because the elements of the underlying predicate Specified Offenses are incorporated into the elements of the Aggravated Family Offense, *see* Section III.B., *supra*, if a predicate Specified Offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," then so too does Aggravated Family Offense.

In the Second Circuit's decision in *United States v. Scott*, the majority made plain that the ultimate question when using the categorical approach in the Force Clause analysis was "whether a necessary component" of the crime at issue "is the defendant's use of physical force." 990 F.3d 94, 105 (2d Cir. 2020). At issue in *Scott* was first-degree manslaughter, in violation of N.Y. Penal Law § 125.20(1), a crime that differentiates between level of force intended in its first element—"intent to cause serious physical injury to another"—and the unintended consequence of such force in its second element: "death." *Id.* at 107 (quoting N.Y. Penal Law § 125.20(1)). In summarizing its conclusion that first-degree manslaughter was a crime of violence, the *en banc* majority focused on the first element: it was the knowing employment or availment "of physical force as a device to cause intended harm" that categorically made first-degree manslaughter a crime of violence. *Id.* at 100. By doing this, the *en banc* majority made plain— reemphasizing the Second Circuit's prior holdings in the process—that "a defendant's use of violent force depends on his knowing or intentional causation of bodily injury." *Id.* at 112.

*Scott* repeatedly emphasized that the Supreme Court, in *United States v. Castleman*, 572 U.S. 157 (2014), had settled the definition of "physical force" for these purposes:

> the Supreme Court made clear in *Castleman* that where "use" is being construed in relationship to "physical force," a defendant's use of such force does not depend on *his* having forceful contact— or indeed any physical contact—with his injured victim. Rather, what matters is that the defendant must have knowingly and intentionally caused an injury that can result only from the use of physical force. On that point, the Court stated, without qualification: "[T]he knowing or intentional causation of bodily injury *necessarily* involves the use of physical force.

*Scott*, 990 F.3d at 11.

Here, the Specified Offense of Assault in the Third Degree under NYPL § 120.00(1) requires an "intent to cause physical injury person," and therefore, the Aggravated Family Offense charged in Count Four qualifies as a crime of violence. Likewise, the Specified Offense of Criminal Obstruction of Breathing or Blood Circulation under NYPL § 121.11(a), requires an intent to cause physical injury to person in the way of impeding the normal breathing or circulation of the blood of a person.

*United States v. Silviano Christman*, 14 Cr. 236 (CS)    Page 11 of 11
Hon. Cathy Seibel
March 2, 2022

## **Conclusion**

      For the foregoing reasons, the Court should find that the conduct of the defendant set forth in Specifications Five and Six of the Violation Report constitutes crimes of violence and that, accordingly, the Probation Department correctly categorized such specifications as Grade A violations, pursuant to U.S.S.G. § 7B1.1.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney

By: */s/ Kevin T. Sullivan*
      Jamie Bagliebter
      Kevin T. Sullivan
      Assistant United States Attorneys
      (212) 637-2236 / (914) 993-1924

cc:    Joseph Vita, Esq. (via ECF and E-Mail)
       Amber Wilton, U.S. Probation Officer (via E-Mail)